# W. W. KIMBALL COMPANY v. PAYNE, ET UX.

Attorney and Client—Agency — Warehouseman — Liens — Appeal and Error.

1. The powers of an attorney are to be determined largely from the purpose and object of his employment. He has implied authority to do anything necessarily incidental to the discharge of the powers for which he is retained.

2. An attorney for a nonresident, employed to recover specific personal property, has authority to receive for his client the property so recovered, and, having rightfully received it, it becomes his duty to provide for its proper care and custody, and to incur, on behalf of his principal, such expenses as may be necessary for that purpose.

3. An attorney having recovered personal property for his nonresident client, in a replevin suit, to the knowledge of defendant, who has no knowledge of private instructions given

the attorney by his client as to the disposition to be made of the property, the latter, with whom the attorney stores the property, has a right to rely and act upon the appearances, and is not chargeable with such private instructions, but has a right to hold the property for his reasonable storage charges agreed to be paid by the attorney.

4. Under the statute providing that any person who shall safely keep or store any personal property, at the request of the owner or the person lawfully in possession thereof, shall have a lien thereon for his reasonable charges for storage, etc. (Sec. 2846, R. S.), it being admitted on the trial that an attorney for a nonresident, who had recovered the property for his client, was in lawful possession of the property at the time he delivered it to defendant for storage, the defendant has a lien on the property for his charges, if any are shown to be due by the evidence.

5. The attorney having testified that it was agreed that there were to be no charges for the storage, but that the defendant wished to have the property (a piano) in his house, and the defendant testifying that he consented to allow the attorney to place the property in his house, upon his agreeing that he would make it all right with him for his taking care of it, and that no one in the house could play, and the instrument was not opened while there, and the district court having passed upon that conflict of evidence, its decision thereon will not be reviewed.

[Decided April 22, 1901.]

ERROR to the District Court, Sweetwater County, HON. DAVID H. CRAIG, Judge.

Replevin for a piano. Defendants claimed storage charges. The facts are stated in the opinion.

*T. S. Taliaferro, Jr.*, and *John H. Chiles*, for plaintiff in error.

While, if a general agent exceed his authority, the principal is bound, provided the party dealing with him does not know the agent's authority is being exceeded, the rule is different as to a special or particular agent. In the latter case, the principal is not bound. (1 Pars. Contracts, Sec. 42.) An attorney is a special agent, and

his acts must be strictly within his authority to bind his client. (Rossiter v. Rossiter, 8 Wend., 494, 24 Am. Dec., 62.) Beyond those matters necessarily incidental to the discharge of the purpose for which he was employed, his powers cease. (3 Ency. L., 2d. ed., 345, 347 ; Welsh v. Cochran, 63 N. Y., 181, 20 Am. R., 519). An attorney has no implied power to assign, or transfer the demand or suit to a third person. (Mechem on Agency, Sec. 813), or to give up the demand, and take other security. (*Id.*) He cannot enter into any agreement independent of any action (1 Pars. Contr., Sec. 117), nor can he bind his client by an agreement collateral merely to a cause of action intrusted to his management. (Wonderly v. Martin, 69 Mo. App., 84 ; Robinson v. Murphy, 69 Ala., 547.) The defendants were bound with notice of the extent of the attorney's authority. (Annely v. DeSaussure, 12 S. C., 488.) Any contract between the attorney and defendants for the storage of the piano was independent of the action in which the attorney had been retained, and beyond the scope of his authority. (Herbert v. Alexander, 2 Cal., 420 ; 1 Pars. Contr., 117 ; Smith's Heirs v. Dixon, 3 Metc. Ky.; 3 Ency. L., 348 ; 1 *id.*, 987 ; Harbach v. Colvin, 73 Ia., 638 ; Dickinson v. Hodges, 43 N. J., Eq., 46 ; Lewis v. Duane, 141 N. Y., 313 ; Smith v. Lamberts, 7 Gratt., 142.) The attorney may have bound himself, but not the principal. (1 Ency. L., 1122 ; Pars. Contr., 116 ; Pittingill v. McGregor, 12 N. H., 179.) The attorney's employment ceased when he recovered the piano. He then converted it to his own use, and having converted it, he had no title to convey. He was not, himself, lawfully in possession, so as to have had a lien for his storage of the property.

CORN, JUSTICE.

This was a suit in replevin. Some time prior to its institution the plaintiff in error by a suit in replevin had recovered from Gilligan and Taliaferro a certain piano.

One Louis J. Palmer was the attorney for plaintiff in error in that suit. Upon the recovery of the property Palmer kept it for a time at his own house, and upon changing his residence, placed it in the custody of Payne for safe keeping. This action for the recovery of the property was brought against Payne and his wife, who defend upon the ground that they have a lien upon it for storage charges. The court below found the amount of the charges for storage, and rendered judgment that the defendants were entitled to possession of the property until such charges should be paid. The plaintiff in error contends that Palmer had no authority to make any contract whatever in regard to the property which would bind his client, upon the general principle that the authority of an attorney, employed to prosecute a suit, is limited to the prosecution and conduct of the suit itself, and that he has no power or authority to bind his principal by any collateral contracts with reference to the property, or other subject-matter of the action.

The precise terms of Palmer's employment are not shown by any letter or other writing. But it appears generally that, the company being a nonresident of the State, he was written to at their instance to bring suit to recover the piano, that he recovered it in an action of replevin, and had it in his possession as their agent. That while it was in his custody he stored it with the defendant Payne.

The powers of an attorney are to be determined in a large measure from the purpose and object of his employment; he has an implied authority to do anything necessarily incidental to the discharge of the purpose for which he was retained, but beyond this his powers cease. (3 Am. & Eng. Enc. Law (2d ed.), 345). The Massachusetts court say, "An attorney at law has authority, by virtue of his employment as such, to do in behalf of his client all acts, in or out of court, necessary or incidental to the prosecution and management of the suit, and which affect the remedy only and not the cause of action."

Moulton v. Bowker, 115 Mass., 40.   Very clearly an attorney employed to recover specific personal property by suit, would not be authorized to accept other property of a different character in satisfaction, or, after a recovery, to sell it or exchange it.   But in such a case, the client being a nonresident, it would be going very far, to say that an attorney would not have authority to receive, for his client, property so recovered.   And, having rightfully received it, it would become his duty to provide for its proper care and custody and to incur, on behalf of his principal, such expenses as might be necessary for that purpose.

The attorney and agent of the company who employed Palmer testified that he had instructed him that immediately upon its recovery he should ship it to his company, and that upon being notified that he had it in his possession, he sent him the money necessary to pay the expense of shipment.   But there is nothing in the evidence tending to show that Payne had any knowledge of this, and the tendency of this testimony is to show that the company not only recognized Palmer as their attorney to take the necessary legal steps in the suit, but also as their agent to take possession of and handle the property. The situation, then, seems to have been that Payne found Palmer in the possession of the piano, he also knew the circumstances under which he obtained it, and that he held it as the representative of the company.   Payne dealt with him as the custodian of the property and such in fact he was, and, by the circumstances of his possession, he was so treated and held out by the company.   Payne had the right to act upon these appearances, and he was not chargeable with any private instructions to the agent of which he had no notice.   Mechem on Agency, Secs. 707, 708.

But independent of the foregoing considerations, the lien of the defendants is claimed by virtue of Section 2846, Rev. Stats., 1899, which provides that any warehouseman or other person who shall safely keep or store any

personal property at the request of the owner or *person law-
fully in possession thereof*, shall have a lien upon all such
personal property for his reasonable charges for storage,
etc. Now, the bill of exceptions shows that upon the
trial in the lower court, it was stipulated by the parties to
the action that Palmer was in the lawful possession of the
property at the time he delivered it to the defendant.
This stipulation would seem to have been made with
direct reference to the statute, and we see no escape from
the conclusion that it brings the case fully and clearly
within its provisions. By its express terms, then, and
upon a conceded fact, Payne had a lien upon the piano
for his charges if any were shown to be due by the evi-
dence. Palmer testified that it was expressly agreed
between Payne and himself that there was to be no charge
for storage, but that Payne was anxious to have the
instrument in his house, so that he and his family, being
musicians, might have the use of it. Payne, upon the
other hand, testified that he told Palmer he could put it
in his house, but that he had no use for it. That Palmer
did so, and said he would make it all right with him for
taking care of it; that nobody in the house could play,
and that it was never used or opened while it was there.
The District Court passed upon this conflict of evidence,
and this court will not review its decision. The judg-
ment must be affirmed.

*Affirmed.*

POTTER, C. J., and KNIGHT, J., concur.